MAZON ASSOCIATES, INC., Appellant

v.

COMERICA BANK, Texas, Appellee.

No. 05–05–00582–CV.

Court of Appeals of Texas, Dallas.

June 27, 2006.

Paul Craig Laird III, Ashley & Laird, L.C., Irving, for appellant.

Michael D. Conner, Rupert Baron, Hirsh & Westheimer, P.C., Houston, for appellee.

Before Justices WRIGHT, BRIDGES, and LANG.

## OPINION

Opinion by Justice LANG.

Mazon Associates, Inc. brought a conversion action against appellee, Comerica Bank, Texas. Mazon alleged Comerica wrongfully paid a check on which Mazon was one of the payees, but which Mazon had not indorsed. The trial court granted Comerica's motion for summary judgment and ordered that Mazon take nothing.

In five issues, Mazon argues that the trial court erred when it granted Comerica's traditional and no-evidence motions for summary judgment. However, we do not reach the issues raised by Mazon as to its conversion claim. Rather, we decide in favor of Comerica on its cross-point asserting that Mazon "lacks standing" to bring a conversion claim on this record. As to Mazon's negligence claims, we conclude that Mazon has not met its summary judgment burden. For the reasons set out below, the trial court's judgment is affirmed. TEX.R.APP. P. 43.2(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2001, Mazon was in the business of factoring accounts receivable. On December 4, 2001, Mazon entered into a factoring agreement with "D. Carter and Associates, Inc. and/or DBA RSM." Douglas Carter signed the factoring agreement and an amendment to that agreement as president of D. Carter and Associates, Inc. and/or DBA RSM.

Decision Consultants, Inc. made a check dated May 13, 2002, in the amount of $29,961.59, payable to the order of:

Carter & Associates/ dba RSM

Mazon Associates

Mazon contends the check was in payment of one of the invoices it purchased under its factoring agreement with RSM. The drawee bank on the check was Comerica, at which Decision Consultants maintained a checking account. The check was deposited into account number 0047 9477 6918 at Bank of America after an individual indorsed the check as "Douglas Carter." The account number was written on the check directly below the indorsement.

The ownership of the account into which the check was deposited is disputed by the parties. Mazon wrote in an internal memo dated June 14, 2002, that payment on an invoice owed by Decision Consultants "was sent to RSM, they cashed the check." Mazon argues, however, that the Bank of America account was owned by Reliant Systems Management, Inc., a separate and distinct company from RSM. Comerica contends that Bank of America records show the account to be an RSM account, and that the account was used as such by both RSM and Mazon.

Bank of America credited the account and forwarded the check for collection through normal banking channels. The check was eventually presented to Comerica for payment. Comerica paid the amount of the check to the presenting bank for credit to Bank of America.

Subsequently, check number 9050, dated May 28, 2002, was made payable to the order of Mazon in the amount of $29,961.59. That check was drawn against the same Bank of America account into which Decision Consultants' check had been deposited and was signed by Priscilla Gayle–Carter, an officer of RSM. Comerica asserts that check number 9050 was provided to Mazon by RSM to replace the check from Decision Consultants. When Mazon deposited check number 9050, it was returned for insufficient funds.

On June 17, 2003, Mazon entered into a "Compromise and Settlement Agreement and Mutual General Release of Claims" with RSM and the successor of Decision Consultants. Under that settlement, Mazon received $18,454.77 in cash and agreed to release Decision Consultants' successor "from all claims and causes of action ... including but not limited to those involving or related to the Factoring Agreement."

Mazon filed this suit against Comerica, contending that because the check was made payable to both Carter & Associates/ dba RSM and Mazon, the check should only have been "negotiated, discharged or enforced" with the indorsements of both payees. Mazon alleged claims of conversion of the check, negligence per se, and gross negligence.

Comerica filed a general denial and asserted that because the check was payable alternatively to either of the named payees as a matter of law and was indorsed by one of the alternative payees, it was properly payable when presented to Comerica. Mazon then amended its petition to plead, in the alternative, that the check required "at least one party's indorsement," but "was never indorsed, signed or in any way deposited" by either payee.

Mazon's first and second motions for summary judgment were denied by the trial court. Comerica's cross-motion for traditional and no-evidence summary judgment was granted without the ground for the decision being specified. This appeal followed.

## II.  STANDING

In its cross-point, Comerica raises the issue of standing for the first time on

appeal. Because the issue of standing is dispositive of Mazon's conversion claim, we begin with that issue. Comerica asserts that Mazon lacks standing to bring this suit on three independent bases: (1) Mazon did not obtain possession of the check and was never a "holder" entitled to enforce the instrument; (2) the check was alternatively payable to RSM, Mazon admits that the check was delivered to RSM, RSM cashed the check, and Mazon suffered no breach of any legal right belonging to it; and (3) Mazon contractually released Decision Consultants, the drawer of the check, discharging the underlying obligation and Decision Consultants' liability on the instrument. Mazon argues in its reply brief that it has standing as a named payee to sue Comerica. Further, Mazon asserts there is no evidence that either payee obtained possession of the check. Finally, Mazon maintains that, in its settlement, it did not release the right to sue Comerica on the check.

### A. Standard of Review

■ Standing is a constitutional prerequisite to maintaining a suit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993). As a necessary component of a court's subject-matter jurisdiction, standing cannot be waived and can be raised for the first time on appeal. *Id.* at 445–46. Whether a trial court has subject-matter jurisdiction is a question of law that is reviewed de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). To have standing, the pleader bears the burden of alleging facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Air Control Bd.*, 852 S.W.2d at 446. When considering the issue of standing for the first time on appeal, the court must construe the plaintiff's petition in his favor, and if necessary, review the entire record to determine if any evidence supports standing. *Id.*

### B. Applicable Law

#### 1. Standing, Generally

■ In Texas, the standing doctrine requires that there be (1) "a real controversy between the parties," that (2) "will be actually determined by the judicial declaration sought." *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex.1996) (quoting *Tex. Air Control Bd.*, 852 S.W.2d at 446). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848 (Tex.2005) (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d* § 1559, 441 (2d ed.1990)). "The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted." *Everett v. TK–Taito, L.L.C.*, 178 S.W.3d 844, 853 (Tex. App.-Fort Worth 2005, no pet.). *See also M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707–08 (Tex.2001) (analyzing standing in the context of asserted claim).

■ Common law rules regarding standing do not apply, however, when the Texas legislature has conferred standing through a statute. *See, e.g., Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex.1984). When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis. *Everett*, 178 S.W.3d at 851. The plaintiff must allege and show how he has been injured or wronged within the parameters of the language used in the statute. *Id. See also Tex. Dep't of Protective and Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex.

2001) (determining whether putative father had standing to maintain a suit affecting the parent-child relationship based solely on construction of statutory standing provision).

## 2. Interest of Multiple Payees in Negotiable Instruments

The Texas Business and Commerce Code identifies some of the interests of multiple payees in a negotiable instrument:

> If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to two or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.

TEX. BUS. & COM.CODE ANN. § 3.110(d) (Vernon 2002).

■ The comments to § 3.110 provide helpful illustrations. If an instrument is payable to X or Y, either is the payee. *Id.* at cmt. 4. If either is in possession, that person is the holder and the person entitled to enforce the instrument. *Id.* If an instrument is payable to X *and* Y, neither X nor Y acting alone is the person to whom the instrument is payable. *Id.* The "identified person" to whom the instrument is payable is X and Y acting jointly. *See id.* The third sentence of § 3.110(d) is directed to cases in which it is not clear, because of ambiguity, whether an instrument is payable to multiple payees. *Id.* In the case of such "ambiguity," persons dealing with the instrument should be able to rely on the indorsement of a single payee. *Id. See also Allied Capital Partners, L.P.*

*v. Bank One, Texas, N.A.,* 68 S.W.3d 51, 53 (Tex.App.-Dallas 2001, no pet.) (concluding under § 3.110 that checks which did not use "or" or "and" between multiple payees were "ambiguous" and payable to any of the payees, individually, in suit brought by accounts receivable factors).

## 3. Conversion Claims

The elements of a claim for conversion of an instrument are set out in § 3.420 of the Texas Business and Commerce Code. *See* TEX. BUS. & COM.CODE ANN. § 3.420 (Vernon 2002). That section provides in relevant part:

> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by:
>
> (1) the issuer or acceptor of the instrument; or
>
> (2) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

*Id.* "[D]elivery" is defined by the Code as "voluntary transfer of possession." TEX. BUS. & COM.CODE ANN. § 1.201(15) (Vernon Supp.2005).

■ Common law claims exist only to the extent they do not conflict with Code provisions. *Bryan v. Citizens Nat'l Bank,* 628 S.W.2d 761, 764 (Tex.1982); *Signal Oil & Gas Co. v. Universal Oil Prods.,* 572 S.W.2d 320, 330 (Tex.1978). *See also* TEX. BUS. & COM.CODE ANN. § 1.103 cmt. 2 (Vernon Supp.2005) (unless otherwise provided, Texas UCC preempts principles of com-

mon law and equity that are inconsistent with either its provisions or its purposes and policies). In *Miller–Rogaska, Inc. v. Bank One, Texas, N.A.*, 931 S.W.2d 655, 660–61 (Tex.App.-Dallas 1996, no writ), this Court held that the predecessor of § 3.420, then § 3.419, displaced the common law cause of action for conversion of a check and one must be a "holder" of the instrument to bring a conversion action.

*Miller* involved a suit by the payee of an improperly delivered check against the banks that had paid the check on the indorsement of a third party to whom the check was mistakenly delivered. *Id.* at 657–58. This Court noted that in order to maintain a conversion action under § 3.419, the *Miller* payee had to be a "holder" of the check at issue, which in turn required it to be in possession of the check. *Id.* at 660–61. *See also* TEX. BUS. & COM.CODE ANN. § 1.201(21)(A) (Vernon Supp.2005) ("holder" means the person in possession of a negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession). We reasoned that to allow a common law conversion claim absent holder status would conflict with § 3.419. *Miller*, 931 S.W.2d at 662. Accordingly, to the extent a conversion claim could be maintained under the common law by the *Miller* payee absent its status as a holder, such a right of action had been displaced by § 3.419. *Id.*

### C. Application of Law to Facts

■ First, we address Mazon's assertion that it has "standing" to bring this action because it is a named payee. Mazon cites no authority for that proposition. However, to determine whether Mazon has standing, we must examine Mazon's particular status as a payee and the rights that it may have as a payee.

The check at issue was made payable as follows:

Carter & Associates/ dba RSM

Mazon Associates

Because the check does not use the word "or" or "and" between the multiple payees, we conclude that the check is "ambiguous" and payable to either of the payees, individually. *See* TEX. BUS. & COM.CODE ANN. § 3.110(d). *See also Allied Capital*, 68 S.W.3d at 53. No evidence to the contrary is presented by Mazon.

■ Next, we address whether Mazon, as a payee to whom the check was payable alternatively, has standing to bring this action. On appeal, Mazon states that "[t]his case is a suit against Comerica Bank on a check for wrongful payment without the correct indorsement of either payee named on the check under Tex. Bus. & Com.Code § 3.201(b)." Mazon further asserts claims of negligence per se and gross negligence, and a general claim for conversion. Mazon does not cite § 3.420 on appeal. However, in the trial court, Mazon described its cause of action as being "a suit on the conversion of a check" and cited § 3.420 as authority.

After our decision in *Miller*, § 3.420 is the sole basis in law for Mazon's conversion claim. *See Miller*, 931 S.W.2d at 662; TEX. BUS. & COM.CODE ANN. § 3.420(a) (providing that an instrument is converted if "a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment"). However, § 3.420 prohibits an action for conversion of an instrument by a payee or indorsee "who did not receive delivery of the instrument." *See* TEX. BUS. & COM.CODE ANN. § 3.420(a)(2). "[D]elivery" is defined by the Code as "voluntary transfer of possession." TEX. BUS. & COM.CODE ANN. § 1.201(15).

Mazon asserts in its reply brief that "[t]here is no evidence that either payee

obtained possession of the check." Further, the uncontroverted evidence reflects Mazon did not receive delivery of the check at issue. Accordingly, Mazon cannot maintain an action for conversion based upon payment of that check. *See Miller,* 931 S.W.2d at 661–62 (noting that § 3.420, successor to § 3.419, confirms conclusion that payee had to be a holder in order to maintain its statutory conversion claim). We decide in favor of Comerica on the issue of standing.

## III. SUMMARY JUDGMENT AS TO NEGLIGENCE CLAIMS

In addition to its conversion claim, Mazon asserts negligence per se for "violation of conduct of banks operating in the State of Texas" and for "failure to require either of the named payees indorsement" on the check. Also, Mazon alleges gross negligence for "failure to require the indorsement of either payee on the check that is the subject of the litigation." Comerica argues, as a matter of law, its payment of the check was proper in all respects because the check was alternatively payable to any named payee and was effectively indorsed. Further, Comerica asserts that as a drawee, it had no duty to review the indorsements on the check. Finally, Comerica argues that Mazon's common law claims of negligence, like its claim of conversion, are statutorily displaced by § 3.420 of the Texas Business and Commerce Code.

### A. *Standard of Review*

The standard of review in summary judgment is well-established. TEX.R. CIV. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 23 (Tex.1990). In reviewing a traditional motion for summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgm't Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

After an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more of the essential elements of a claim. *See* TEX.R. CIV. P. 166a(i). A no-evidence motion for summary judgment places the burden on the nonmovant to present summary judgment evidence raising a genuine fact issue. *Espalin v. Children's Med. Ctr. of Dallas,* 27 S.W.3d 675, 683 (Tex.App.-Dallas 2000, no pet.). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *Gen. Mills,* 12 S.W.3d at 832–33. Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Id.* at 833. More than a scintilla of evidence exists only when the competent summary judgment evidence would permit reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *Rehab 2112, L.L.C. v. Audio Images Int'l, Inc.,* 168 S.W.3d 308, 313 (Tex.App.-Dallas 2005, no pet.).

When the trial court does not specify the basis for its summary judgment, the appealing party must show on appeal that each independent ground alleged is insuffi-

cient to support the summary judgment granted. *See Western Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005); *Star-Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Adams v. First Nat'l Bank of Bells/Savoy,* 154 S.W.3d 859, 867 (Tex. App.-Dallas 2005, no pet.); *Caldwell v. Curioni,* 125 S.W.3d 784, 789 (Tex.App.-Dallas 2004, pet. denied). Both no-evidence and traditional grounds for summary judgment are evaluated to determine whether the trial court was correct under any theory. *See Skiles v. Jack in the Box, Inc.,* 170 S.W.3d 173, 178 (Tex.App.-Dallas 2005, pet. filed); *Alaniz v. Hoyt,* 105 S.W.3d 330, 344 (Tex.App.-Corpus Christi 2003, no pet.); *McKillip v. Employers Fire Ins. Co.,* 932 S.W.2d 268, 270 (Tex.App.-Texarkana 1996, no writ). An appellate court must affirm the summary judgment if any one of the movant's theories, which supports the summary judgment, has merit. *See Star–Telegram,* 915 S.W.2d at 473; *First Union Nat'l Bank v. Richmont Capital Partners I, L.P.,* 168 S.W.3d 917, 923 (Tex.App.-Dallas 2005, no pet.).

### B. Analysis

Without deciding whether Mazon's negligence claims were displaced by the Texas Business and Commerce Code, we conclude Mazon has not met its motion for summary judgment burden on its negligence claims. To maintain a negligence action, Mazon must first establish some duty owed to it by Comerica. *See Miller,* 931 S.W.2d at 663. Whether a duty exists is a question of law for the court. *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994). This determination is based on the facts surrounding the occurrence in question. *See Oldaker v. Lock Constr. Co.,* 528 S.W.2d 71, 77 (Tex.Civ.App.-Amarillo 1975, writ ref'd n.r.e.). Mazon has not shown any evidence that it was a customer of Comerica, or that it had a relationship with the bank that would give rise to a legal obligation regarding the check. *See*

*Miller,* 931 S.W.2d at 664. Accordingly, Mazon has not produced any evidence establishing a legal duty owed to it by Comerica. For this reason, the trial court did not err in granting Comerica's motion for summary judgment on Mazon's negligence claims.

### IV. CONCLUSION

We decide in favor of Comerica on its cross-point asserting that Mazon lacks standing to bring a conversion action on the facts as presented. Also, we conclude that Mazon has not met its motion for summary judgment burden to provide evidence showing a legal duty by Comerica to Mazon to support its negligence claims. Accordingly, we need not reach the five issues presented by Mazon. *See* Tex. R.App. P. 47.1. The trial court's judgment is affirmed.