**AFFIRM; Opinion Filed May 20, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00423-CV

### ZAAN, LLC, Appellant

### V.

### BARRY SANGANI, SANGANI PROPERTIES, LTD, AND KATHY WEBSTER D/B/A COLLIN COUNTY LAND CO., Appellees

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-02993-2009**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Brown

Appellant Zaan, LLC sued appellees Barry Sangani, Sangani Properties, Ltd., and Kathy Webster d/b/a Collin County Land Co. (Webster) alleging various claims related to its purchase of undeveloped real property. All claims against Sangani and its negligence claims against Sangani Properties were disposed of prior to trial. A jury then found against Zaan on all remaining claims. In fourteen issues, Zaan complains of the trial court's pretrial summary judgment rulings, its ruling on Sangani Properties motion for directed verdict, the sufficiency of the evidence to support the jury's verdict, and the trial court's exclusion of evidence. For the following reasons, we affirm the trial court's judgment.

## Factual and Procedural Background

In 2007, before Zaan, LLC was formed, one of its future members, Mike Fazeli, decided to purchase raw property in Prosper, Texas on which to build an office building. Fazeli asked for help from his friend, Alan Mansourian, who had experience in the Prosper real estate market. Mansourian told Fazeli about a piece of raw property he and his business partner, Barry Sangani, had just sold to a real estate developer, DIRA. Fazeli was interested in the property, and Mansourian asked Sangani, who managed their real estate investments and had connections with DIRA's owner, to help Fazeli.

Sangani told Mansourian the property was a good choice for Fazeli and that he could get a better price for the property from DIRA than Fazeli could on his own, but only if Fazeli stopped making inquiries about the property. Mansourian then told Fazeli that Sangani was going to help him. Although Fazeli believed Sangani was helping him as a favor to Mansouri, Sangani admitted he had intended to profit from his business relationships and his efforts.

Sangani initially had his real estate agent, Kathy Webster, who had sold the property to DIRA, begin price negotiations with DIRA's agent. At some point, Sangani took over and convinced DIRA to sell the land for $6.50 per square foot. Sangani then told Mansourian that Fazeli could have the property for $7.50 per square foot, and their partnership would keep the difference. Mansourian told Sangani he did not want to tell Fazeli about the profit because they were close friends, and Sangani said that he could structure the transaction so Fazeli would not know about the profit.

When Mansourian told Fazelli that Sangani had gotten the property for him at $7.50 per square foot, Fazeli was pleased and agreed to purchase the property. On Sangani's instruction, Webster then executed contracts in the name of her d/b/a, "Collin County Land Co.," which would result in her "flipping" the property to Fazeli at a profit. In the first contract, Collin

County Land Co. agreed to purchase the property from DIRA at $6.50 per square foot. In the second contract, Collin County Land Co. agreed to sell the property to Fazeli at $7.50 per square foot. The contract between Fazeli and Collin County Land Co. also provided Fazeli would pay Collin County Land Co. a 1.5% commission as the broker on the transaction.

Meanwhile, Mansourian and Sangani had recommended Fazeli use Webster as his real estate agent and, at some point, Fazeli engaged her. Webster never told Fazeli about the "flip profit." Webster did tell Fazeli that Collin County Land Co. did not own the property, but only had it under contract from DIRA. Fazeli also agreed that his earnest money could be used as the earnest money in the DIRA/Collin County Land Co. contract.

After Fazeli contracted to purchase the property, he caused Zaan to be formed, and then assigned the contract to Zaan. Zaan purchased the property. At closing, Webster represented both Zaan and Sangani. Webster received the commission provided in her contract with Fazeli, and directed the flip profit be paid to Sangani Properties and one of its lenders. Sangani Properties is owned in part by Sangani and Mansourian.

Soon after Zaan purchased the property, Zaan and DIRA disagreed about development issues. Zaan ultimately filed suit against DIRA for fraud, statutory fraud, and rescission. During the course of the litigation, Zaan discovered the flip profit. It then added Sangani, Sangani Properties, and Webster as defendants, asserting claims for negligence, negligent misrepresentation, gross negligence, fraud, fraudulent inducement and statutory fraud. It also asserted a breach of fiduciary duty claim against Webster and Sangani.

After filing suit, Zaan moved for partial summary judgment on its breach of fiduciary duty and fraud claims against Barry Sangani and Sangani Properties. The trial court denied the motion in its entirety. Sangani then filed a motion for summary judgment on all of Zaan's claims against him asserting both traditional and no-evidence grounds. Sangani Properties followed

suit, moving for summary judgment on the same and some additional grounds. The trial court granted summary judgment in favor of Sangani on Zaan's claims for "(1) negligence, (2) gross negligence, (3) negligent misrepresentation, (4) respondeat superior, and (4) non-delegable duties," but otherwise denied the motion. The trial court also granted summary judgment in favor of Sangani Properties "on all causes of action except fraud and conspiracy to commit fraud," but the trial court's order left "[v]icarious liability . . . under advisement."

While the summary judgment motions were pending, appellees jointly filed a plea to the jurisdiction. In the plea, appellees asserted Zaan had no standing to assert any of its claims because its allegations concerned breaches of duties owed to Fazeli, not Zaan, and misrepresentations made to Fazeli, not Zaan, that induced Fazeli to enter the contract. To support the plea, appellees presented evidence that Zaan was not formed until after Fazeli entered into the contract and therefore did not exist at the time the complained-of misrepresentations were made. Zaan countered that it had standing because it was Fazeli who assigned the contract to it and Zaan was the party that purchased the property and thus suffered the "injury."[1] Alternatively, Zaan claimed it had standing to assert Fazeli's direct tort claims because Fazeli assigned those claims to Zaan. To support this latter contention, Zaan presented evidence of an assignment Fazeli had executed that very day. After a hearing, the trial court granted the plea to the jurisdiction, in part, dismissing only Zaan's claims against Sangani. The trial court denied the plea with respect to Zaan's claim against Sangani Properties and Webster.

After the trial court's rulings on summary judgment and on the plea to the jurisdiction, all claims against Webster and the fraud and vicarious liability claims against Sangani Properties were left remaining. A jury trial on those claims followed. After hearing the plaintiff's case in chief, the trial court granted a directed verdict on Zaan's vicarious liability theories of

---

[1] Zaan does not articulate what "injury" it suffered.

"ratification of the fraud," "partnership," and "joint enterprise." The jury subsequently failed to find Webster breached her fiduciary duties to Zaan or that either Webster or Sangani Properties committed common-law fraud or statutory fraud. Based on the jury's verdict, as well as its prior summary judgment rulings and its ruling on the plea to the jurisdiction, the trial court rendered judgment that Zaan take nothing on its claims.

The Appeal

Zaan raises fourteen points of error on appeal. In its first five issues, Zaan complains of the summary judgment rulings. Zaan's sixth issue complains of the ruling on the plea to the jurisdiction. Zaan's remaining eight issues complain of error occurring at the trial on the merits.

Before turning to the merits, we first address issues with Zaan's briefing. Zaan has failed to provide this Court with a clear procedural background setting forth the manner in which its various claims against the different parties were disposed. With respect to its complaints regarding the trial court's summary judgment rulings, Zaan has failed to clearly set forth the claims on which summary judgment was granted, the specific grounds on which summary judgment was sought, or where in its responses to the summary judgments it directed the trial court to the evidence on which it relies to raise a fact issue.

Additionally, Zaan has not articulated what, if any effect, the trial court's subsequent dismissal of certain claims, or the jury's findings, had on the trial court's previous summary judgment rulings. Throughout its brief, Zaan has often failed to distinguish between itself and Fazeli and between the acts of the various parties it sued. Zaan also relies on the actions of all three defendants to supports its claims against each defendant. For example, in arguing its summary judgment points, Zaan generally attributes statements made by "Mansourian/Sangani/Webster" to all of the appellees without establishing a specific legal basis

that would allow it to do so.[2]   Zaan's failure to identify the actions of each party as it relates to its causes of action has made it difficult to determine the specific factual basis on which its claims rest and indeed, in some respects, its standing to assert the claims.  To the extent we can discern Zaan's particular complaints as to a particular defendant and they are adequately briefed, we address its issues.

Zaan's Standing

We begin by addressing Zaan's sixth issue in which it complains the trial court erred in granting the plea to the jurisdiction and dismissing its claims against Sangani.  Standing, as a component of subject-matter jurisdiction, may be raised in a plea to the jurisdiction.  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).   Whether a party has standing is a question of law we review de novo.  *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

A plaintiff must plead facts that affirmatively demonstrate its standing to assert its claims.  *See Andrade v. Venable*, 372 S.W.3d 134, 138−39 (Tex. 2012); *Mazon Assoc., Inc. v. Comerica Bank*, 195 S.W.3d 800, 803 (Tex. App.—Dallas 2006, no pet.).   In reviewing a plea to the jurisdiction, we consider the pleadings and any evidence before the court at the hearing on the plea relevant to the jurisdictional issue.  *See Venco Const., Inc. v. Nelson*, No. 13-0750, 2015 WL 1869932, *4 (Tex. 2015); *Bland Indep. School Dist.,* 34 S.W.3d at 555.

"[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Andrade*, 345 S.W.3d at 14.  The standing inquiry focuses on who may bring an action.  *Venco Const.,* 2015 WL 1869932, at *3.  Only the person whose primary legal right has been breached by the asserted causes of action has standing to seek redress for an

---

[2] Zaan generally cites to agency and partnership law, but fails to apply that law to the facts of the case.   For example, it fails to discuss whether any complained-of misrepresentations were made with the authority of the party it seeks to attribute the statements.  *See, e.g., Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998).

injury. *See Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976). Stated otherwise, a plaintiff may not sue for breaches of legal rights belonging to other parties. *See id; see also Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 248-49 (Tex. App.—Dallas 2005, no pet.). Thus, a party's standing must be analyzed in light of the particular claims asserted. *See Mazon Assocs.,* 195 S.W.3d at 803.

On appeal, Zaan first contends its Second Amended Pleading and a supplemental petition contained facts demonstrating its standing to assert fraud claims. It relies on its allegations that Fazeli assigned the contract to Zaan and Fazeli relied upon Sangani's misrepresentations, which caused Zaan to purchase the property. Zaan does not identify any particular affirmative misrepresentation made by Sangani on which it asserts standing to bring its claim. Zaan does claim standing for Sangani's "failure to disclose" the flip profit.[3]

A fraud claim is personal to the defrauded party. *Nobles,* 533 S.W.2d at 927. Consequently, only the defrauded party has standing to assert a fraud claim. *Id.* Here, Fazeli assigned the contract to Zaan, and Zaan accepted that assignment at the purchase price stated in the contract. Zaan does not assert that the price was unfair or that it paid more for the property than its fair market value. Nor does Zaan complain any representations were made that in any way affected the fair market value of the property. Instead, it complains that Sangani failed to disclose the flip profit, which induced Fazeli to enter into the agreement to purchase the property. Given that Zaan was not even in existence at the time Fazeli entered into the contract,

---

[3] On appeal, Zaan has not asserted it demonstrated standing because it alleged Sangani was vicariously liable for Webster's breaches of duties she owed directly to Zaan. We nevertheless note that, after a full trial on the merits, the jury failed to find Webster was liable. Therefore, Zaan was not harmed by the trial court's previous rulings disposing of that claim against Sangani. *See G & H Towing Co. v. Magee,* 347 S.W.3d 293, 298 (Tex. 2011).

its claims are necessarily premised on Sangani's alleged duties to Fazeli.[4] *See Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied) (failure to disclose does not constitute fraud in the absence of a duty to disclose). We conclude this claim belongs to Fazeli, and only he may bring it. *Cf. Noble,* 533 S.W.3d at 925; *Baker v. Robinson*, 305 S.W.3d 783, 786 (Tex. App.—Waco 2009, pet. denied) (partnership, that did not exist at time of misrepresentations, could not have been defrauded and, thus, lacked standing).

Second, Zaan asserts it has standing to assert Fazeli's independent claims because Fazeli assigned those claims to Zaan. As noted, the only evidence Zaan presented at the hearing on the plea to the jurisdiction to prove an assignment shows Fazeli assigned his claims to Zaan that day. A party's standing is determined at the time it files suit. *Town of Fairview v. Lawler*, 252 S.W.3d 853, 855 (Tex. App.−Dallas 2008, no pet.). If a party does not have standing at that time, the trial court has no jurisdiction over the party's claims. *See M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 711 (Tex. 2001); *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 703−04 (Tex. App.—Fort Worth 2006, pet. denied). More specifically, a parties' subsequent acquisition of an interest sufficient to support standing will not retroactively vest the trial court with jurisdiction. *Kilpatrick*, 205 S.W.3d at 703-04. Because Zaan lacked standing to assert its claims against Sangani at the time it brought them, the trial court properly dismissed those claims. We resolve the sixth issue against Zaan.

### The Partial Summary Judgments

We now turn to Zaan's complaints regarding the trial court's rulings on various motions for summary judgment. In its first five issues, Zaan asserts the trial court erred in granting

---

[4] Zaan did allege both Sangani and Mansourian had told Fazeli his share of the costs for infrastructure improvements would be about $100,000. In its pleadings, Zaan did not assert this statement was untrue or allege any other facts suggesting this statement supported its claims against Sangani. We also note that at trial, despite its attempt, Zaan failed to present any evidence that the infrastructure costs were misrepresented. *Cf. Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (trial court's erroneous summary judgment rulings rendered harmless by subsequent proceedings).

summary judgment in favor of Sangani and Sangani Properties on various claims and also in denying its own motion for summary judgment on those same claims. Because the trial court subsequently dismissed all of Zaan's claims against Sangani on the plea to the jurisdiction, and Sangani has failed to show it erred in doing so, we will consider Zaan's issues only as they relate to Sangani Properties.

We review a trial court's summary judgment de novo. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). When a party moves for summary judgment on both traditional and no-evidence grounds, we first address the no-evidence grounds. *Merriman v. XTO Energy, Inc*., 407 S.W.3d 244, 248 (Tex. 2013). In a no-evidence motion for summary judgment, the nonmovant has the burden to produce summary judgment evidence raising a genuine issue of material fact as to each challenged element of its cause of action. TEX. R. CIV. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C*., 73 S.W.3d 193, 206 (Tex. 2002). We review the evidence under the same legal sufficiency standard as directed verdicts. *Merriman*, 407 S.W.3d at 248; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). Under that standard, evidence is considered in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Merriman*, 407 S.W.3d at 248

When a party moves for summary judgment on multiple grounds and the trial court's order granting summary judgment does not specify the ground or grounds on which it was based, a party who appeals that order must challenge each possible ground on which summary judgment could have been granted. *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Jarvis v. Rocanville Corp*., 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied). If an appellant fails to do so, we must uphold the summary judgment on any unchallenged grounds.

*Jarvis*, 298 S.W.3d at 313; *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 875 (Tex. App.—Dallas 2005, no pet.).

In its first issue, Zaan asserts the trial court erred in granting Sangani Properties' traditional motion for summary judgment on its negligence and gross negligence claims. In its motion for summary judgment, Sangani Properties asserted the economic loss rule barred Zaan's claims for negligence and gross negligence as a matter of law. Sangani Properties also moved for summary judgment on these claims asserting "no evidence" grounds, and specifically that Zaan had no evidence it owed a duty to Zaan. The trial court's order did not specify the grounds on which it granted summary judgment. Because Zaan has not challenged Sangani Properties' no-evidence grounds on the negligence and gross negligence claims, we must affirm the trial court's judgment as to these claims. *Malooly Bros.,* 461 S.W.2d at 121; *Jarvis,* 298 S.W.3d at 313.

In its second issue, Zaan asserts the trial court erred in granting Sangani Properties' "no evidence" motion for summary judgment on its claim for negligent misrepresentation because it raised a fact issue on each element of that claim. The elements of negligent misrepresentation are: (1) a representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999); *Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310, 313 (Tex. App.—Dallas 2013, no pet.). To support a claim for negligent misrepresentation, the false information provided must concern an "existing fact." *AKB*

*Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 237-38 (Tex. App.—Dallas 2012, no pet.).

To show Sangani Properties provided it with "false information," Zaan relies on evidence of representations made to Fazeli before Zaan was formed, which induced Fazeli to enter into the agreement to purchase the property. The only "false information" it asserts was provided was the purchase price from DIRA and statements that Sangani and Mansourian made to Fazeli about what Fazeli's share of infrastructure costs over the entire tract would be. Initially, we note evidence regarding statements made to Fazeli does not constitute any evidence that false information was provided to *Zaan* and, as explained above, Zaan lacks standing to sue for representations made to Fazeli. Additionally, Zaan has not directed us to any evidence probative of the issue of whether Sangani Properties (or Mansourian or Sangani) failed to exercise reasonable care or competence in obtaining or communicating any information about infrastructure costs.[5] We resolve the second issue against Zaan.

In its third and fourth issues, Zaan asserts the trial court erred in granting Sangani Properties motion for summary judgment on Zaan's claims for statutory fraud, fraudulent inducement, and breach of fiduciary duty, and in denying its motion for summary judgment on those same claims. The trial court did not, however, grant summary judgment in favor of Sangani Properties on any of these claims. And Zaan may not appeal the denial of its motion for summary judgment. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 364 (Tex. 1966); *Clark v. Dillard's, Inc.*, No. 05-13-01503-CV, 2015 WL 1346099 at *7 (Tex. App.—Dallas Mar. 15, 2015, no pet.). We resolve the third and fourth issues against Zaan.

---

[5] Indeed, at trial, Fazeli admitted Sangani and Mansourian had told him they could not advise him on development issues and he would have to get information on those issues elsewhere.

–11–

Zaan's fifth issue concerns the trial court's summary judgment only with respect to Zaan's claims against Sangani. As noted previously, after the trial court granted summary judgment in favor of Sangani, the trial court dismissed Zaan's claim against him for want of jurisdiction. Having concluded Zaan failed to show the trial court erred in doing so, we do not reach this issue.

## The Trial

Zaan's seventh through tenth issues attack the jury's verdict. According to Zaan, it proved as a matter of law that Webster violated her fiduciary duties and that both Webster and Sangani Properties committed statutory and common-law fraud. Alternatively, it contends the jury's failure to find in its favor on these claims is so against the overwhelming weight of the evidence as to be clearly wrong and unjust.

At trial, Sangani testified that when he agreed to help Fazeli, he did not agree to do so for free. Instead, he told Mansourian that he would keep a $1 per square foot profit if he could get DIRA to sell for under $7 per square foot. According to Sangani, Mansourian was supposed to tell Fazeli about the profit. But after Sangani negotiated the purchase from DIRA, Mansourian told him he had not and did not want to tell his friend about the profit. Indeed, Mansourian did not want the profit at all, but Sangani insisted he would need to be compensated for his efforts.

Sangani said he did not care whether or not Fazeli knew about the profit, but because Mansourian did not want him to know, he told Mansouri he could structure the transaction so Fazeli would not find out. Sangani then asked Webster to put the property under contract in her name and she could then sell to Fazeli. Sangani said he often used his real estate agents in this capacity.

Meanwhile, Fazeli had contacted Webster to ask about other properties. She later assisted Fazeli with the contracts, including the assignment to Zaan, and then represented Zaan at

–12–

closing. However, Webster did not begin to represent Fazeli until after Sangani had already negotiated the purchase price for the property. As a consequence, Webster did not assist Fazeli with such negotiations. Instead, Fazeli knew, and had wanted, Sangani to handle those negotiations. Webster said that she was told Sangani was trying to help Fazeli get the property at a cheaper price than he could otherwise get, and also hoped to make a profit for himself. Webster acknowledged she never told Fazeli about the flip profit, but thought Fazeli knew. Furthermore, Fazeli never asked Webster what the sales price in her contract with DIRA was. On the other hand, Fazeli asked numerous detailed questions about other issues that were important to him.

At Sangani's direction, Webster prepared the contracts with herself as the buyer from DIRA and the seller to Fazeli. Fazeli knew she was not the actual owner of the property, and she believed it was also clear that she was taking direction from Sangani and that Sangani was selling the property to Fazeli. Fazeli also acknowledged in writing that Webster did not own the property, but only had it under contract from DIRA.

Fazeli generally testified that he relied on appellees' "advice" in purchasing the property and also relied on Sangani to negotiate the price for the property. Fazeli complained that Sangani did not then give him what he was "supposed" to get, specifically, the price that DIRA had agreed to sell the property to Sangani for. He also complained that Sangani did not tell him he was receiving the flip profit. Fazeli, however, admitted he does not know whether he would have still purchased the property if he had known about the profit. Instead, he complained he was deprived the opportunity to negotiate the same price from DIRA that Sangani had obtained for himself. DIRA's owner John Chong, however, testified he would not have sold the property to Fazeli or Zaan for $7.50 per square foot. Indeed, Chong stated he had not wanted to sell and

he had intended to develop the entire tract himself. He said if a stranger had wanted to purchase the property, he probably would not have sold or would have asked for $10 per square foot.

When examining a legal sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *R.J. Suarez Enterprises Inc. v. PNYX L.*P., 380 S.W.3d 238, 245 (Tex. App.—Dallas 2012, no pet.). An appellant attacking the legal sufficiency of an adverse finding on an issue on which it has the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *R.J. Suarez Enters,* 380 S.W.3d at 245. The appellant must show that there is no evidence to support the fact finder's finding and that the evidence conclusively establishes the opposite of the finding. *See Dow*, 46 S.W.3d at 241.

In a factual sufficiency review, an appellate court considers and weighs all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *R.J. Suarez Enters*, 380 S.W.3d at 245. An appellant attacking factual sufficiency with respect to an adverse finding on which it had the burden of proof must demonstrate that the finding is against the great weight and preponderance of the evidence. *Dow*, 46 S.W.3d at 242. We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We may not substitute our judgment for that of the trier of fact or pass on the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407.

On appeal, Zaan contends Webster's admissions established, as a matter of law, her liability for breach of fiduciary duty, statutory fraud, and common-law fraud. In a similar vein, Zaan asserts Webster's, Sangani's, and Mansourian's admissions establish Sangani Properties' liability for the same three causes of action. Zaan argues these issues together, asserting we

should render judgment in its favor on three different causes of action, yet it fails to discuss the evidence presented at trial in light of the specific elements of any of the causes of action.

An appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record." TEX. R. APP. P. 38.1(i); *Estate of Finney*, 424 S.W.3d 608, 621 (Tex. App.—Dallas 2013, no pet.). We may not speculate as to the substance of the specific issues asserted by an appellant. *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied). Nor will we make an appellant's arguments for it. *Robertson v. SW. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.). Instead, it is the appellant's duty to cite legal authority and provide substantive analysis showing error. *Brooks v. City Of Dallas*, 168 S.W.3d 370, 372 (Tex. App.—Dallas 2005, no pet.).

Here, Zaan provides boiler plate law on the standard of review, quotes the somewhat lengthy jury charges on each of the causes of action submitted, recites only the evidence favorable to its position, and concludes in a single paragraph, with no analysis, that it conclusively established its entitlement to recovery on three different causes of action. It is evident from our review of the evidence presented and the applicable jury charges for each claim, that we could not render judgment in Zaan's favor without making its arguments for it. For example, the jury was charged Webster had a duty to "fully and fairly disclose all important information to Zaan, [] concerning the transaction." Zaan has not argued, directed us to any evidence, or even asserted the information Webster did not disclose was "important," even though that was a contested issue at trial. *Capcor at KirbyMain, L.L.C. v. Moody Nat. Kirby Houston S, L.L.C,* 01-13-00068-CV, 2014 WL 982858, at *4 (Tex. App.—Houston [1st Dist.] Mar. 13, 2014, no pet.) *(*"[w]hich facts are material to a transaction will vary with circumstances—a fact that is pertinent in one context may be inapposite in another—and absent a

–15–

legal rule to the contrary, materiality is an issue of fact for the jury). We nevertheless note, there was evidence from which the jury could have found Zaan was interested only in the price it had to pay, that the price was both fair and advantageous, and that it was not important that Sangani Properties also benefitted from Sangani's efforts.

Similarly, Zaan has failed to discuss the evidence as it relates to the elements it was required to prove to recover for fraud or statutory fraud. For example, Zaan has failed to direct us to conclusive evidence that would require the jury to find any information that was not disclosed was "material." Nor has Zaan directed us to conclusive evidence that would require the jury to find any misrepresentations or failures to disclose were made with the intent of inducing Zaan to take any action or that Zaan actually relied on any information that was misrepresented or not disclosed in purchasing the property. We nevertheless note appellees did present evidence that the flip profit was not disclosed because Mansourian was embarrassed that he was profiting from the deal. Additionally, Fazeli himself acknowledged he may have purchased the property even if he had known about the profit. We conclude Zaan has wholly failed to demonstrate that the evidence conclusively establishes "all vital facts" in support of any of its claims. Zaan has likewise failed to show the jury's failures to find liability were against the great weight and preponderance of the evidence. We resolve Zaan's seventh, eighth, ninth, and tenth issues against it.

In its eleventh issue, Zaan asserts the trial court erred in directing a verdict on its breach of fiduciary duty claim against Sangani Properties. Zaan did not plead a breach of fiduciary claim against Sangani Properties, but nevertheless asserts that claim was "tried by consent." Zaan has directed us to no evidence and provided us with no argument or authority that Sangani Properties owed it a fiduciary duty. *See City of Brownsville ex rel. Pub. Util Bd. v. AEB Tex. Cent. Co.*, 348 S.W.3d 348, 356 (Tex. App.—Dallas 2011, pet. denied) (appellant waived

argument that fiduciary relationship existed by failing to "include any legal authority, analysis, or discussion of the law of fiduciaries or how this relationship is created . . . ")  We resolve the eleventh issue against Zaan.

In its twelfth issue, Zaan asserts it established "vicarious liability" for "Sangani, Webster's, and Mansourian's" actions as a matter of law.  In its thirteenth issue, Zaan asserts the trial court erred in directing a verdict on its theory that Sangani Properties "ratified the fraud." Zaan's arguments under these issues are premised on its theory that Sangani Properties is vicariously liable for the tortious acts of Webster, Sangani, and/or Mansourian.  However, because Zaan neither conclusively established nor obtained any findings that Webster, Sangani, or Mansourian were directly liable for the complained-of torts, Zaan cannot show Webster or Sangani Properties is vicariously liable for that conduct.  *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011).  We resolve Zaan's twelfth and thirteenth issues against it.

In its fourteenth issue, Zaan asserts the trial court erred in excluding evidence of estimated infrastructure costs.  At trial, Zaan sought to show Mansourian "misrepresented" the infrastructure costs necessary to develop the property.  To show Mansourian's statement about costs was false, it sought to present evidence purporting to show what the actual infrastructure costs would be.  The only evidence it had to show such costs were: (1) hearsay statements made by DIRA's owner to Fazeli, and (2) estimates showing what it would cost to have just Zaan's lot ready to build on.  One of those estimates was made by a company owned in part by DIRA.  The trial court excluded Zaan's evidence because it had no expert that could testify about the infrastructure costs.

On appeal, Zaan asserts the trial court erred in excluding this testimony because Zaan and DIRA, as owners of the property, were competent to provide "diminished market value testimony."  *See Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d

–17–

846, 852–53 (Tex. 2011) (property owner is qualified to testify to value of her property). On appeal, although not entirely clear, it appears Zaan asserts the evidence was relevant to prove damages. Because the jury failed to find any liability, Zaan cannot have been harmed by the exclusion of damages evidence. *See Phan v. Addison Spectrum, L.P.*, 244 S.W.3d 892, 899 (Tex. App.—Dallas 2008, no pet.); *see also* TEX. R. APP. P. 44.1(a)(1) (party asserting error must show error probably caused rendition of improper judgment). We also note that Zaan did not proffer the evidence to prove the property's market value, and the excluded evidence did not purport to value the property. Indeed, Zaan's position at trial, on which it prevailed, was that evidence of the property's value was irrelevant. By doing so, it successfully prevented appellees from presenting evidence that Zaan paid substantially less for the property than its fair market value. Zaan cannot now contend the trial court erred in excluding market value evidence. *Cf. In re C.Q.T.M.*, 25 S.W.3d 730, 738 (Tex. App.—Waco 2000, pet. denied) (arguments asserted at trial by proponent of evidence must comport with arguments on appeal). We resolve the fourteenth issue against Zaan.

We affirm the trial court's judgment.


/Ada Brown/
ADA BROWN
JUSTICE

120423F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ZAAN, LLC, Appellant

No. 05-12-00423-CV     V.

BARRY SANGANI, SANGANI PROPERTIES, LTD, and KATHY WEBSTER, Appellees

On Appeal from the 296th Judicial District Court, Collin County, Texas

Trial Court Cause No. 296-02993-2009.

Opinion delivered by Justice Brown. Justices Lang and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees BARRY SANGANI, SANGANI PROPERTIES, LTD, KATHY WEBSTER recover their costs of this appeal from appellant ZAAN, LLC.

Judgment entered this 20th day of May, 2015.