**Wade SKILES, Appellant**

v.

**JACK IN THE BOX, INC., Appellee.**

No. 05–04–00412–CV.

Court of Appeals of Texas, Dallas.

July 7, 2005.

Rehearing Overruled Sept. 14, 2005.

174

Jason C.N. Smith, Fort Worth, for appellant.

Jerry Fazio, Jason Eric Kipness, Owen & Fazio, P.C., Dallas, for appellee.

Before Justices BRIDGES, RICHTER, and LANG.

## OPINION

Opinion By Justice LANG.

Wade Skiles, plaintiff below, appeals the trial court's summary judgment that he take nothing in his lawsuit for negligence against Jack in the Box, Inc., defendant below.

Skiles argues three issues on appeal: (1) the trial court erred when it granted summary judgment finding that there was no evidence that Jack–in–the–Box breached "any" duty owed to Skiles; (2) the trial court erred when it granted summary judgment finding that there was no evidence that Jack–in–the–Box's negligence

was a proximate cause of Skiles' injury; and (3) the trial court erred when it granted summary judgment in favor of Jack–in–the–Box on its affirmative defense finding, as a matter of law, that Skiles' negligence was the sole proximate cause of his injury.

For the reasons set forth below, Skiles' three issues on appeal are decided in his favor. The trial court's judgment is reversed and this case is remanded for further proceedings consistent with this opinion. TEX.R.APP. P. 43.2(d).

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of his injury, Skiles had been employed by Jack–in–the–Box for 24 years and worked as a licensed tractor-trailer driver. His job duties included the transport and delivery of food product to Jack–in–the–Box restaurants. Skiles also trained new drivers on safety issues regarding operation of the tractor-trailer, loading and unloading of freight, and how to report tractor-trailer problems.

Since 1980, Jack–in–the–Box's trailers have been equipped with either electric or hydraulic lift gates. The lift gates, which function similar to elevators, fold vertically into the back of the trailer, and through the use of a control box, can be rotated to a horizontal position. While in the horizontal position, drivers can lower the lift gate to ground level, stand on top of it, and raise the lift gate to trailer level. This process allows drivers to safely unload food product from the trailers. Occasionally, drivers encounter problems with lift gates during deliveries. When this occurs, Jack–in–the–Box requires its drivers to call the Jack–in–the–Box distribution center and the Rollins service center. Rollins is the exclusive provider of service, maintenance, and repairs for Jack–in–the–Box tractor-trailers. Once a driver calls Rollins, a service person is sent to repair the tractor-trailer.

On April 29, 2002, Skiles arrived for a scheduled delivery at a Jack–in–the–Box restaurant in Seguin, Texas. Skiles attempted to use the hydraulic lift gate to unload food product, but it would not function. Skiles informed the Jack–in–the–Box restaurant manager of the problem. The manager told Skiles that it was the "lunch rush" and the restaurant was out of hamburger meat. Pursuant to Jack–in–the–Box policy, Skiles called the Jack–in–the–Box distribution center and reported the problem. He informed the traffic supervisor that he was going to use a ladder to access the food product. Skiles claims the supervisor's response to this course of action was, "Good." The traffic supervisor testified in his deposition that he did not recall specifically what was said during his conversation with Skiles. Then, later in the deposition he was asked what was said "generally." His response was that he "would have" told Skiles to call Rollins. Following this conversation, Skiles borrowed a ladder from the Jack–in–the–Box restaurant and used it to climb over the lift gate and jump into the back of the trailer. Skiles claims his knees "popped" when he landed in the trailer. Despite the injury, Skiles located the hamburger meat and passed it over the raised lift gate to the Jack–in–the–Box restaurant manager. Skiles was unable to exit the trailer because of his injury. Then, Skiles placed a call to Rollins and reported the lift gate problem. The Rollins service person repaired the lift gate by releasing a safety valve.

After completing his scheduled deliveries, Skiles returned to the Jack–in–the–Box distribution center and submitted an employee injury claim form. Skiles underwent surgery on his left knee and received physical therapy on both knees. Despite

the treatment, Skiles informed Jack–in–the–Box that he was unable to return to work as a tractor-trailer driver. Skiles claims he was terminated when Jack–in–the–Box did not offer him another position.

Jack–in–the–Box's insurance paid $11,313.23 in past medical bills for Skiles' injury. However, Skiles claims replacement surgery is necessary for both knees. This surgery is estimated to cost approximately $70,000. Jack–in–the–Box refused to pay for the replacement surgery. Because Jack–in–the–Box is a nonsubscriber to workers compensation, Skiles filed a negligence suit. Jack–in–the–Box denied the allegations and filed a no-evidence and traditional motion for summary judgment.

In its no-evidence motion for summary judgment, Jack–in–the–Box claimed there was no evidence that: (1) Jack–in–the–Box breached any duty toward Skiles; (2) Jack–in–the–Box was negligent in causing the accident; and (3) Jack–in–the–Box's negligence was a proximate cause of Skiles' injury. Skiles responded that the trial court should deny the no-evidence portion of Jack–in–the–Box's motion for summary judgment because the following evidence that Jack–in–the–Box breached its duty to Skiles created an issue of material fact: (1) Jack–in–the–Box's policies did not expressly prohibit employees from using ladders to obtain products when lift gates did not operate; (2) Jack–in–the–Box knew of the dangers associated with using a ladder to unload a trailer when a lift gate would not operate and failed to warn Skiles of the dangers; (3) Jack–in–the–Box failed to provide Skiles with a safe lift gate; and (4) Jack–in–the–Box failed to make Skiles aware of a safety valve that would have made the lift gate in question function properly.

In its traditional motion for summary judgment, Jack–in–the–Box asserted it established each element of its affirmative defense of sole proximate cause, as a matter of law. Jack–in–the–Box claimed Skiles' deposition testimony established he was the sole proximate cause of his injury. Skiles responded that the trial court should deny the portion of Jack–in–the–Box's motion requesting traditional summary judgment on its affirmative defense because Jack–in–the–Box did not establish that Skiles was negligent as a matter of law due to the fact that it failed to establish that Skiles was aware of any unsafe condition.

The trial court granted Jack–in–the–Box's motion for summary judgment without stating the grounds for its decision. This appeal followed.

## II. STANDARD OF REVIEW

When the trial court does not specify the basis for its summary judgment, the appealing party must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000); *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *see also Adams v. First Nat. Bank of Bells/Savoy*, 154 S.W.3d 859, 867 (Tex.App.-Dallas 2005, no pet.); *Caldwell v. Curioni*, 125 S.W.3d 784, 789 (Tex.App.-Dallas 2004, pet. denied). Both the no-evidence and traditional grounds for summary judgment are evaluated to determine whether the trial court was correct under any theory. *See Alaniz v. Hoyt*, 105 S.W.3d 330, 344 (Tex.App.-Corpus Christi 2003, no pet.); *McKillip v. Employers Fire Ins. Co.*, 932 S.W.2d 268, 270 (Tex.App.-Texarkana 1996, no writ). An appellate court must affirm the summary judgment if any one of the movant's theories, which supports the summary judgment, has merit. *Star–Telegram*, 915 S.W.2d at 473; *Adams*, 154 S.W.3d at 867.

## III. NEGLIGENCE

In his first and second issues on appeal, Skiles argues: (1) the trial court erred when it granted summary judgment finding there was no evidence that Jack–in–the–Box breached "any" duty it owed to Skiles; and (2) the trial court erred when it granted summary judgment finding that there was no evidence that Jack–in–the–Box's negligence was a proximate cause of Skiles' injury.

### A. Breach of Legal Duty Owed

In articulating his negligence claims, Skiles claims Jack–in–the–Box breached the following legal duties it owed him: (1) Jack–in–the–Box had a duty to provide him, as an employee, safe instrumentalities with which to do his job; (2) Jack–in–the–Box failed to warn him of the risk of using a ladder to unload the trailer; (3) Jack–in–the–Box never provided him with training in the use of a ladder and it did not inform him of the safety valve on the trailer; (4) Jack–in–the–Box had no policies warning employees that it was unsafe to use a ladder to unload a trailer when the lift gate did not function.

### 1. Applicable Law

■ In an action against an employer who is a nonsubsriber to workers' compensation insurance, the plaintiff must prove the negligence of the employer. TEX. LAB. CODE ANN. § 406.033(d) (Vernon 1996); *see Werner v. Colwell,* 909 S.W.2d 866, 868 (Tex.1995); *see also Patino v. Complete Tire, Inc.,* 158 S.W.3d 655, 660 (Tex.App.-Dallas 2005, pet. denied). The elements of a negligence cause of action are: (1) the defendant owed a particular duty to the plaintiff; (2) the defendant breached that legal duty; and (3) the breach of that legal duty proximately caused the plaintiff's injury. *See Van Horn v. Chambers,* 970 S.W.2d 542, 544 (Tex.1998); *see also Patino,* 158 S.W.3d at 659.

■ The threshold inquiry in a negligence case is duty. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). The existence of a legal duty is a question of law unless the parties dispute the facts giving rise to the duty. *Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex.1998); *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 312 (Tex. 1983).

■ As a general rule, an employer has the continuous and nondelegable duty to furnish safe machinery and instrumentalities with which its employees are to work. *See Humble Sand & Gravel, Inc. v. Gomez,* 146 S.W.3d 170, 204 n. 45 (Tex.2004). The duty to provide safe instrumentalities is necessarily fact specific. *Kroger Co. v. Keng,* 976 S.W.2d 882, 885 (Tex.App.-Tyler 1998), *aff'd,* 23 S.W.3d 347 (Tex.2000).

■ The duty to warn or to caution an employee of a danger arises when: (1) the employment is of a dangerous character requiring skill and caution for its safe and proper discharge; and (2) the employer is aware of the danger and has reason to know that the employee is unaware of the danger. *Patino,* 158 S.W.3d at 660–61; *Allen v. A & T Transp. Co.,* 79 S.W.3d 65, 70 (Tex.App.-Texarkana 2002, pet. denied).

■ An employer has a duty to adequately hire, train, and supervise employees. *Patino,* 158 S.W.3d at 660; *Allen,* 79 S.W.3d at 70. Although an employer is not an insurer of its employees' safety at work, it has a duty to use ordinary care in providing a safe workplace. *Patino,* 158 S.W.3d at 660; *Allen,* 79 S.W.3d at 70. This includes providing rules and regulations for the safety of employees, warning employees of the hazards of their employment, and supervising their activities. *Pa-*

*tino*, 158 S.W.3d at 660; *Allen*, 79 S.W.3d at 70. The age and experience of the employee should be considered in measuring the duty of the employer. *Patino*, 158 S.W.3d at 660; *Allen*, 79 S.W.3d at 70.

As an offshoot of the duty to adequately hire, train, and supervise employees, the employer also has a duty to instruct its employees in the safe use and handling of products and equipment used in and around an employer's premises or facilities. *Patino*, 158 S.W.3d at 660 2005 WL 553644, at *3; *Allen*, 79 S.W.3d at 70. However, an employer's duty to instruct applies to an inexperienced employee, not to an employee who is experienced in the work to which he is assigned. *Patino*, 158 S.W.3d at 660; *Allen*, 79 S.W.3d at 70. Further, an employer has no duty to adopt safety rules where its business is neither complex nor hazardous, or where the dangers incident to the work are obvious or are of common knowledge and fully understood by the employee. *Patino*, 158 S.W.3d at 660; *Allen*, 79 S.W.3d at 70.

### 2. Application of the Law to the Facts

The responsibility for Skiles' work-related injuries is governed by principles of common-law negligence because Jack–in–the–Box is a nonsubscriber to workers' compensation. *See* Tex. Lab.Code Ann. § 406.033(d) (Vernon 1996); *Werner*, 909 S.W.2d at 868; *see also Patino*, 158 S.W.3d at 660. To prove his negligence claim, Skiles must prove the following: (1) Jack–in–the–Box owed a particular duty to him; (2) Jack–in–the–Box breached that legal duty; and (3) Jack–in–the–Box's breach of duty was a proximate cause of Skiles' injury. *See Van Horn*, 970 S.W.2d at 544; *see also Patino*, 158 S.W.3d at 659.

### a. Legal Duty Owed

Essentially, Skiles contends that Jack–in–the–Box owed him the following legal duties: (i) the duty to provide safe instrumentalities; (ii) the duty to warn; (iii) the duty to adequately hire, train, and supervise; and (iv) the duty to instruct. Jack–in–the–Box responds that Skiles failed to produce "any" evidence that it owed a duty to Skiles. We address each of Skiles' four contentions separately to determine whether Jack–in–the–Box owed him that particular "duty."

### i. Duty to Provide Safe Instrumentalities

First, Skiles claims Jack–in–the–Box had a legal duty to provide him with safe instrumentalities with which to do his job. The general rule is that an employer has the continuous and non-delegable duty to furnish safe machinery and instrumentalities. *See Humble Sand & Gravel, Inc.*, 146 S.W.3d at 204 n. 45. Skiles satisfied his burden to establish this duty by providing more than a scintilla of evidence that he was an employee of Jack–in–the–Box.

We conclude Jack–in–the–Box had a legal duty to provide Skiles with safe instrumentalities with which to do his job.

### ii. Duty to Warn

Second, Skiles claims Jack–in–the–Box had a duty to warn him of the danger associated with using a ladder to unload a trailer when the lift gate did not function. Skiles offered no evidence showing that his employment at Jack–in–the–Box was of a dangerous character requiring skill and caution for its safe and proper discharge. *See Allen*, 79 S.W.3d at 70 (duty to warn if employment is of a dangerous character). Although ladders may be viewed as inherently dangerous equipment, Skiles admitted in his deposition testimony that Jack–in–the–Box did not require its drivers to use ladders to unload food product when a lift gate malfunctioned.

However, Skiles offered evidence that when he suggested he could use a ladder to get into the truck and unload, the supervisor said "Good." Additionally, he offered evidence showing that Jack–in–the–Box's supervisor knew the danger associated with the use of a ladder in the manner Skiles described to the supervisor before he used the ladder. The supervisor had reason to know Skiles was unaware of that danger because Skiles suggested it. *See Allen*, 79 S.W.3d at 70 (duty to warn when reason to know employee is unaware of danger). However, Skiles had previously encountered lift gate problems as both a driver and shift leader. These malfunctions were not an unexpected or unusual danger about which Jack–in–the–Box had knowledge and Skiles did not. Skiles knew the procedure to follow when a lift gate malfunctioned. This procedure did not involve using a ladder to enter the trailer. Any dangers associated with the use of a ladder were obvious to both Skiles and Jack–in–the–Box. Nevertheless, Skiles produced more than a scintilla of evidence showing Jack–in–the–Box owed a duty to warn.

We conclude Jack–in–the–Box owed a duty to warn to Skiles.

### iii. Duty to Adequately Hire, Train, and Supervise

■ Third, Skiles claims Jack–in–the–Box had a duty to adequately hire, train, and supervise him, but failed to provide him with training on the use of a ladder and failed to inform him of the safety valve on the trailer. This duty is measured by the employee's experience. Skiles had twenty-four years' experience unloading food product and delivering it to Jack–in–the–Box restaurants. He was an experienced driver and familiar with the equipment used to perform his job. Skiles also trained new drivers on safety issues re-garding operation of the tractor-trailer, loading and unloading of freight, and how to report problems with the tractor-trailer. Jack–in–the–Box's tractor-trailers were equipped with lift gates to facilitate the loading and unloading of food products. Skiles was trained to operate lift gates, but Jack–in–the–Box neither trained nor required its drivers to repair them. Drivers were instructed to call the Rollins service center and the Jack–in–the–Box distribution center if they encountered tractor-trailer problems during a delivery. Skiles acknowledged he was aware of this procedure. Also, the summary judgment evidence shows he was a shift leader who knew the procedure to follow when a lift gate malfunctioned.

We conclude Jack–in–the–Box owed no duty to provide Skiles with training on the use of a ladder or inform him of the safety valve on the trailer.

### iv. Duty to Instruct

■ Finally, Skiles claims Jack–in–the–Box had a duty to instruct by establishing and enforcing safety policies, but that Jack–in–the–Box had no policies warning employees that it was unsafe to use a ladder to unload a trailer when the lift gate did not function. Skiles offered no evidence suggesting his employment at Jack–in–the–Box was either complex or hazardous. *See Allen*, 79 S.W.3d at 70 (no duty to adopt safety rules where business is neither complex nor hazardous). Jack–in–the–Box did not require its drivers to use ladders to unload food product. Thus, any dangers associated with using a ladder to unload food product did not constitute dangers incident to Skiles' work. Skiles failed to produce evidence showing Jack–in–the–Box owed a duty to establish and enforce safety policies.

We conclude Jack–in–the–Box did not owe a duty to instruct because Skiles pro-

duced no summary judgment evidence to the contrary.

### b. Breach of Legal Duty

Based on our conclusion that Jack–in–the–Box owed Skiles a nondelegable duty to provide him with safe instrumentalities and the duty to warn him of the dangers associated with using a ladder to unload a trailer when the lift gate did not function, we must now review Skiles' claims that Jack–in–the–Box breached these duties.

■■■ Skiles claims Jack–in–the–Box breached its duty to provide safe instrumentalities because it failed to adequately maintain its lift gates. The only evidence Skiles produced to support this contention is that, as shift leader, he assisted other Jack–in–the–Box drivers with lift gate problems. Skiles offered no evidence regarding specific instances of the other lift gate failures or the circumstances surrounding the failures. The only support for Skiles' contention is a general and conclusory allegation in his affidavit. Skiles' evidence constitutes less than a scintilla of evidence because it does nothing more than create a mere surmise or suspicion as to whether Jack–in–the–Box failed to adequately maintain its lift gates. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003), *cert. denied*, 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004). Because Skiles failed to satisfy his burden,

we conclude there is no evidence showing Jack–in–the–Box failed to adequately maintain its lift gates.

Skiles also claims Jack–in–the–Box breached its duty to provide safe instrumentalities because it failed to provide him with a functioning lift gate on the day of his injury. In support of this claim, Skiles produced evidence showing his lift gate would not function when making a scheduled delivery to a Jack–in–the–Box restaurant in Seguin, Texas. The evidence also indicates that both the Jack–in–the–Box traffic supervisor and Rollins service center acknowledged that Skiles' lift gate would not function. Skiles satisfied his burden by producing more than a scintilla of evidence as to whether Jack–in–the–Box failed to provide him with a functioning lift gate on the day of his injury. *King Ranch, Inc.*, 118 S.W.3d at 751. Accordingly, we conclude the trial court could not have properly granted Jack–in–the–Box's no-evidence summary judgment motion on Skiles' claim that Jack–in–the–Box breached its duty to provide safe instrumentalities.

■■■ In respect to Skiles' claim that Jack–in–the–Box breached its duty to warn, Skiles offers his affidavit testimony regarding his desire to assure that the delivery was made to assure the restaurant has provisions to satisfy the "noon rush."[1] He claims he called his supervi-

---

1. Jack–in–the–Box argues that Skiles' affidavit is a sham affidavit because it conflicts with his earlier deposition testimony and the subsequent affidavit testimony. Jack–in–the–Box filed a motion to strike Skiles' affidavit as a "sham affidavit" and as a bad faith affidavit under Texas Rule of Civil Procedure 166(a). The trial court denied Jack–in–the–Box's motion without comment. A party cannot file an affidavit that contradicts that party's own deposition testimony, without explanation, for the purpose of creating a fact issue to avoid summary judgment. When there is no explanation, it is assumed that the sole purpose of the affidavit was to avoid summary judgment, and as such, the affidavit merely presents a "sham" fact issue. *Burkett v. Welborn*, 42 S.W.3d 282, 286 (Tex.App.-Texarkana 2001, no pet.). In his deposition, Skiles stated he did not recall the substance of his conversation with the supervisor, but after the no-evidence motion for summary judgment was filed, his affidavit stated that when he discussed using a ladder to climb into the bed of the truck instead of waiting for the repair personnel, the supervisor said, "Good." We recognize that there are variances between

sor, advised him of the lift gate malfunction, advised he intended to use a step ladder to get up over the left gate, and the supervisor responded, "Good." The supervisor did not recall what was said and testified in his deposition that he "would have" told Skiles to call Rollins, the lessor of the truck. After the conversation, Skiles proceeded to use the ladder and the injury occurred as described above. On this record, we conclude that Skiles met his burden to provide more than a scintilla of evidence. This evidence creates a fact issue. Therefore, the trial court erred when it granted Jack–in–the–Box's no-evidence motion for summary judgment as to Skiles' claim that Jack–in–the–Box breached its duty to warn.

Skiles' first issue on appeal is decided in his favor. Having concluded Skiles satisfied his burden as to two of his breach of duty claims, we must next determine whether Skiles produced evidence showing his injury was proximately caused by Jack–in–the–Box's breach.

## B. Injury Proximately Caused by the Breach

In his second issue on appeal, Skiles argues the trial court erred when it granted summary judgment finding that there was no evidence that Jack–in–the–Box's negligence was a proximate cause of Skiles' injury. Jack–in–the–Box responds that there is no evidence showing its negligence was a proximate cause of Skiles' injury. Specifically, Jack–in–the–Box responds that Skiles' summary judgment evidence did not raise an issue of material fact on the issue of the "cause in fact" or the "but for" element of proximate cause.

### 1. Applicable Law

■ Proximate cause consists of cause-in-fact and foreseeability. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996); *Patino,* 158 S.W.3d at 661. "Cause in fact" means the act or omission was a substantial factor in bringing about the injury and, without it, the harm would not have occurred. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992); *see Patino,* 158 S.W.3d at 661. "Foreseeability" means the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Travis,* 830 S.W.2d at 98; *Mo. Pac. R.R. Co. v. Am. Statesman,* 552 S.W.2d 99, 103 (Tex.1977). The test for foreseeability is whether the defendant, as a person of ordinary intelligence and prudence, should have anticipated the danger to others created by his act, although he is not required to anticipate just how the injuries will arise. *Brown v. Edwards Transfer Co.,* 764 S.W.2d 220, 223 (Tex. 1988).

■ Texas courts have routinely held that proximate causation is a fact question within the jury's province. *Berry Prop. Mgmt. v. Bliskey,* 850 S.W.2d 644, 656 (Tex.App.-Corpus Christi 1993, writ dism'd by agr.) However, proximate cause becomes a question of law when the circumstances are such that, in the opinion of the court, reasonable minds could not arrive at different conclusions. *Mo. Pac. R.R. Co.,* 552 S.W.2d at 103.

### 2. Application of the Law to the Facts

■ The burden is on Skiles to produce more than a scintilla of probative evidence to raise a genuine issue of materi-

---

Skiles' deposition testimony and his affidavit testimony. However, we cannot conclude these differences are so egregious that the trial court abused its discretion in refusing to strike the affidavit. *See Shaw v. Maddox Metal Works, Inc.,* 73 S.W.3d 472, 478 (Tex.App.-Dallas 2002, no pet.).

al fact as to proximate cause. *King Ranch, Inc.*, 118 S.W.3d at 751. The general rule is that Texas courts will find sufficient proof of causation when lay testimony establishes a sequence of events that provides a strong, logically traceable connection between the event and the condition. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.1984).

 Skiles contends there is a logically traceable connection between using a ladder to jump over the lift gate and the "popping" and "pain" in his knees. In our view, Jack–in–the–Box's failure to provide Skiles with a working lift gate does not connect any breach of a duty by Jack–in–the–Box to his injury. However, Skiles' use of a ladder and jumping over the lift gate was attributable to Jack–in–the–Box's failure to warn Skiles that his intended use of a ladder was unsafe. Skiles produced more than a scintilla of evidence connecting Jack–in–the–Box's breach to his injury. Accordingly, we conclude the trial court erred when it granted Jack–in–the–Box's no-evidence motion for summary judgment.

Skiles' second issue on appeal is decided in his favor. Having resolved Skiles' first and second issues in his favor, we must address his third issue on appeal, which concerns Jack–in–the–Box's traditional motion for summary judgment on its affirmative defense.

## IV. SOLE PROXIMATE CAUSE OF INJURY

In his third issue on appeal, Skiles argues the trial court erred when it granted summary judgment in favor of Jack–in–the–Box's affirmative defense finding, as a matter of law, that Skiles' negligence was the sole proximate cause of his injury. Jack–in–the–Box responds that Skiles was the sole proximate cause of his injury because he violated Jack–in–the–Box's policy regarding how to handle malfunctioning lift gates.

### A. Applicable Law

 A nonsubscriber employer may not assert the following defenses in a negligence action against it: (1) that the employee was guilty of contributory negligence; (2) that the employee assumed the risk of injury or death; or (3) the injury or death was caused by the negligence of a fellow employee. TEX. LAB.CODE ANN. § 406.033(a) (Vernon 1996); *see Kroger*, 23 S.W.3d at 349–53; *see also Brookshire Bros., Inc. v. Lewis*, 997 S.W.2d 908, 919 (Tex.App.-Beaumont 1999, pet. denied). However, a nonsubscriber employer is entitled to the defense of sole proximate cause. *Sears, Roebuck & Co. v. Robinson*, 154 Tex. 336, 280 S.W.2d 238, 239 (1955); *see* TEX. LAB.CODE ANN. § 406.033(c)(1) (Vernon 1996).

An employer may defend itself by showing that it was not negligent in causing the injury or that its employee's conduct was the sole proximate cause of the injury. *See Lewis*, 997 S.W.2d at 919; *Brookshire Bros., Inc. v. Wagnon*, 979 S.W.2d 343, 347 (Tex.App.-Tyler 1998, pet. denied). If the plaintiff was the sole proximate cause of his injury, then his recovery is prevented. *See Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 371, 207 S.W.2d 365, 367 (1948). Sole proximate cause is ordinarily a fact issue. *See id.*

 Sole proximate cause is not an affirmative defense. *Walzier v. Newton*, 27 S.W.3d 561, 563 (Tex.App.-Amarillo 2000, no pet.). Affirmative defenses are claims interposed to defeat a prima facie case established by the plaintiff. *Id.* The evidence offered to prove an affirmative defense does not rebut the factual propositions uttered by the plaintiff, but instead, serves to establish an independent reason

for denying the plaintiff any recovery. *Id.* Sole proximate cause does not fit within this mold because it does not tend to interject an independent basis for denying the plaintiff recovery once he establishes a prima facie case. *Id.* at 563–64. Rather, sole proximate cause is an inferential rebuttal issue which, when invoked by the defendant, purports to negate an element of the plaintiff's cause of action. *Id.*

### B. Application of the Law to the Facts

Jack–in–the–Box "move[d] for traditional summary judgment on [its] affirmative defense of sole proximate cause as plead [sic] in [its] answer." Jack–in–the–Box was entitled to traditional summary judgment if it either: (1) conclusively negated at least one of the essential elements of Skiles' cause of action; or (2) conclusively established each element of its affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995); *General Mills Restaurants v. Texas Wings, Inc.,* 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.). However, sole proximate cause is not an affirmative defense. *See Walzier,* 27 S.W.3d at 563–64. Further, based on our resolution of Skiles' first and second issues on appeal that he raised an issue of fact to defeat Jack–in–the–Box's no-evidence motion for summary judgment, we cannot conclude that had Jack–in–the–Box properly moved for traditional summary judgment that it conclusively negated at least one of the essential elements of Skiles' cause of action.

Skiles' third issue on appeal is decided in his favor.

### V. CONCLUSION

We conclude the trial court erred when it granted summary judgment finding that there was no evidence that Jack–in–the–Box breached "any" duty owed to Skiles.

We also conclude the trial court erred when it granted summary judgment finding that there was no evidence that Jack–in–the–Box's negligence was a proximate cause of Skiles' injury. Finally, we conclude the trial court erred when it granted traditional summary judgment on Jack–in–the–Box's affirmative defense finding, as a matter of law, that Skiles' negligence was the sole proximate cause of his injury. Skiles' three issues on appeal are decided in his favor.

The trial court's judgment is reversed and this case is remanded for further proceedings consistent with this opinion. Tex. R.App. P. 43.2(d).